Michael J. GIODA, Plaintiff-Appellee,

v.

SAIPAN STEVEDORING COMPANY, INC., Defendant-Appellant.

No. 86-2435.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 13, 1987.

Decided Aug. 18, 1988.

Thomas C. Sterling, Klemm, Blair, Sterling & Johnson, Agana, Guam, for defendant-appellant.

Douglas F. Cushnie, Saipan, CM, for plaintiff-appellee.

Before POOLE, KOZINSKI and O'SCANNLAIN, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We are presented with a question of first impression involving the appellate jurisdictions of the District Court for the Northern Mariana Islands and of this court. The appellate division of the district court determined that a statutory change enacted while this appeal was pending divested it of jurisdiction. It consequently ordered transfer of the matter to this court.

We conclude that we must reject transfer because the appellate division may indeed hear this appeal. We therefore remand for further proceedings.

## FACTS AND PROCEEDINGS

Gioda worked for Saipan Stevedoring Company, Inc. ("Saisteve") as a night security guard at Commercial Point, Saipan, Commonwealth of the Northern Mariana Islands (C.N.M.I.). While he was on duty, he was shot.

Gioda brought a negligence suit in the trial division of the District Court for the Northern Mariana Islands against Saisteve, claiming $250,000 damages. At the time, only the district court could hear the case; the Commonwealth Trial Court's jurisdiction did not extend to matters involving local law in which the amount in controversy exceeded $5000. See C.N.M.I. Const., Art. IV, § 2. The jury returned a verdict for Gioda awarding him $63,024. Saisteve moved for a judgment notwithstanding the verdict, and, in the alternative, for a new trial. The trial court denied these motions.

On June 22, 1984 Saisteve filed a notice of appeal "to the Appellate Division, District Court for the Northern Mariana Islands. . . ." There, Saisteve claimed that the trial division of the district court erred in (1) denying its motions for a directed verdict and for judgment notwithstanding the verdict; (2) admitting certain evidence; and (3) instructing the jury.

The appellate division concluded that Saisteve's notice of appeal was timely, and that, when the notice of appeal was filed, it had jurisdiction to hear the appeal. Nevertheless, the appellate division found that an amendment to its jurisdictional statute, enacted while the appeal was pending, divested it of jurisdiction. Rather than dismiss the appeal, the court invoked the jurisdictional transfer statute, 28 U.S.C. § 1631, and transferred the matter to this court.

At this court's request, Gioda and Saisteve then filed supplemental briefs on the jurisdiction issue. On May 13, 1987 a mo-

tions panel of this court held that "[j]urisdiction in this court to hear this appeal exists", and the matter was allowed to proceed to oral argument.[1]

## DISCUSSION

When examining the propriety of intercourt transfer, we must consider two questions: (1) Could this court have heard the appeal at the time it had been filed in the appellate division? (2) Had the appellate division been divested of jurisdiction?

Transfer is governed by 28 U.S.C. § 1631, which provides that a court lacking jurisdiction "shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed...." 28 U.S.C. § 1631. *See Town of N. Bonneville, Wash. v. United States District Court*, 732 F.2d 747, 750 (9th Cir.1984).

## I

## INTERPRETATION OF THE PREDECESSOR JURISDICTIONAL STATUTE

The jurisdiction of the appellate division of the District Court for the Northern Mariana Islands was originally founded in 48 U.S.C. § 1694b, enacted in Pub.L. No. 95–157 (1977) pursuant to the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America, Pub.L. No. 94–241 (1976), 48 U.S.C. § 1681 note (the "Covenant").

The drafters of the Covenant had three options with regard to federal jurisdiction over local matters in the Northern Marianas: (1) they could leave decisions of local law entirely to the federal district court; (2) they could create local courts endowed with jurisdiction over all matters of local law; or (3) they could create local courts with limited trial and appellate jurisdiction, leaving some matters to the federal courts in the local judiciary's initial stages. They

chose the last: the United States agreed to create the District Court for the Northern Mariana Islands with jurisdiction extending to some matters normally assigned to state courts. *See Covenant*, Art. IV (1976). *See also* Willens & Siemer, *Constitutional Principles and Innovation in a Pacific Setting*, 65 Geo.L.J. 1373, 1441–46 (1977). To effectuate this concurrent jurisdiction scheme, the statute also created separate trial and appellate divisions within the district court, and gave it "such appellate jurisdiction as the Constitution and laws of the Northern Mariana Islands provide." § 1694b.

Because the drafters of the federal statute pointed to "the laws of the Northern Mariana Islands" as a jurisdictional trigger, the statute appeared to allow the island legislature to determine the extent of the district court's appellate jurisdiction over local matters. Initially, the island legislature used this mandate to grant the appellate division broad jurisdiction over local matters. For example, the notes to the island's constitution stated:

> "It is intended that the [appellate division of the] district court have jurisdiction over all appeals in Commonwealth cases for at least five years, regardless whether those cases were tried by the Commonwealth trial court or by the federal district court. After the conclusion of the five-year period, the legislature may create a Commonwealth appeals court and the federal district court would have appellate jurisdiction over only those Commonwealth matters, if any, that the Commonwealth appeals court is not empowered to hear."

*Analysis of the Constitution of the Commonwealth of the Northern Mariana Islands* (1976) at 107. *See also* Willens & Siemer, 1441–46. Although the five-year period has long since expired, the legislature of the Northern Marianas has not yet created a local court of appeals. Hence, when this suit was filed, section 1694b

---

1. A finding of jurisdiction by a motions panel of this court does not foreclose a merits panel from reconsidering the jurisdictional issue. *Arizona Elec. Power Coop. v. United States*, 816 F.2d 1366, 1371 (9th Cir.1987). We therefore reexamine the jurisdictional issue in greater detail.

could have been read as empowering the legislature to determine the jurisdiction of the appellate division over matters of local law.

This court endorsed this interpretation of section 1694b in *Sablan v. Santos*, 634 F.2d 1153 (9th Cir.1980). In *Sablan*, we held that appeals from the district court on matters of local law should be heard first by the appellate division and not directly by this court. *Id.* at 1155. Therefore, the appeal from the trial division had been properly filed in the appellate division in accordance with *Sablan*.

## II

### CONGRESSIONAL REVERSAL OF *SABLAN V. SANTOS*

The *Sablan* decision has been the object of criticism on several grounds. First, it is often difficult to determine whether a decision is based on local or federal law, so the proper appellate forum is not always clear. *See, e.g., Taisacan v. Camacho*, 660 F.2d 411, 413 (9th Cir.1981). Second, commentators have suggested that it is unclear under *Sablan* in what circumstances an appeal lay to the Ninth Circuit from the appellate division on matters of local law. 130 Cong.Rec. H9577 (daily ed. Sept. 13, 1984). Third, it was unclear under *Sablan* whether decisions of the district court on matters of federal law could be appealed directly to the Court of Appeals. *See* 130 Cong.Rec. at H9577.

Congress responded to this criticism of *Sablan* by enacting Public Law No. 98–454 (codified at 48 U.S.C. § 1694b(a)). The new statute became effective January 5, 1985, while this appeal was pending before the appellate division. The amendment deleted the language enabling the territorial legislature to determine the appellate division's jurisdiction. Instead, section 1694b(a) (to which the jurisdictional provisions of section 1694b were transferred in amended form) states that:

> Prior to the establishment of an appellate court for the Northern Mariana Islands

the district court shall have such appellate jurisdiction *over the courts established by the Constitution or laws of the Northern Mariana Islands* as the Constitution and laws of the Northern Mariana Islands provide....

48 U.S.C. § 1694b(a) (emphasis added). Because the District Court for the Northern Mariana Islands is established by Congress and not by "the Constitution or laws of the Northern Mariana Islands," the amendment effectively terminated any appellate division jurisdiction over the decisions of the district court's trial division. Instead, all appeals from the trial division of the district court would henceforth be taken directly to this court. *Covenant*, Art. IV, Sec. 403(b); 28 U.S.C. § 1291; 48 U.S.C. § 1694(b)(4)(C).

The legislative history of the amendment bears out this reading. Senator Weicker's analysis stated:

> [The section] establishes beyond any doubt that the appellate division of the District Court for the Northern Mariana Islands has jurisdiction only over the appeals from the decisions of the local courts of the Northern Mariana Islands and not over those of the district court ... [T]he decision in *Sablan v. Santos* ... is in conflict with § 402(c) of the Covenant ... The clause "such appellate jurisdiction as the laws of the Northern Mariana Islands provide", means, as do the corresponding provisions on Guam and in the Virgin Islands (48 U.S.C. § 1424(a) and 1612) that the laws of the Northern Mariana Islands may restrict the right of appeal, not that a local legislature can determine the court to which the decisions of a federal court may be appealed.

130 Cong.Rec. at H9577. In sum, the amendment made explicit that the judicial system of the Northern Marianas and its interaction with the United States Courts of Appeals were to be patterned on the existing territorial courts of Guam. *See* 48 U.S.C. § 1424 *et seq.; see also* 48 U.S.C. § 1613a (like system for Virgin Islands).[2]

---

**2.** The statutes creating district courts for Guam, the Virgin Islands, and the Northern Mariana Islands each establish a district court with a trial division having original jurisdiction over

And under the Guam scheme, we have stated, contrary to our holding in *Sablan*, that the appellate division of the district court has no jurisdiction except to hear appeals from the Island Court of Guam. *In re Webster*, 363 F.2d 837, 839 (9th Cir.1966).

Public Law No. 98–454 thus made clear that, at least from January 5, 1985 on, the appellate division could no longer take appeals from the trial division. However, the amendment failed to specify what treatment should be accorded to appeals pending in the appellate division at its enactment.

## III

## APPLICATION OF COMMON LAW OF TRANSFER

### A. *Jurisdiction of This Court*

The Supreme Court has set forth the rule concerning retroactive application of a statutory divestment of jurisdiction to pending cases. "[W]hen a law conferring jurisdiction is repealed without any reservation as to pending cases, all cases fall with the law...." *Bruner v. United States*, 343 U.S. 112, 116–17, 72 S.Ct. 581, 584, 96 L.Ed. 786 (1952). Citing *Bruner*, the appellate division of the district court found that it lacked jurisdiction over this matter, but that the interest of justice warranted transfer under 28 U.S.C. § 1631 to this court.

In reviewing the propriety of an intercourt transfer, we follow cases decided pursuant to 28 U.S.C. § 1631, which have promulgated a tripartite test. First, on the date the notice of appeal was filed, the transferee court could have heard the appeal. *In re Exclusive Indus. Corp.*, 751 F.2d 806, 809 (5th Cir.1985); *McKeel v. Islamic Republic of Iran*, 722 F.2d 582, 591 (9th Cir.1983), *cert. denied,* 469 U.S. 880, 105 S.Ct. 243, 83 L.Ed.2d 182 (1984); 28 U.S.C. § 1631. Second, the transferor court must lack jurisdiction. *Exclusive Indus.* at 809. Third, the interest of justice would be served by transfer. *Id.*

We find that we must decline transfer because of the first prong of the transfer test. When the notice of appeal was filed in June 1984,[3] this court could not have entertained this appeal because, as noted earlier, before the enactment of Pub.L. 98–454, all appeals from the trial division had to go first to the appellate division. *Sablan v. Santos*, 634 F.2d 1153, 1155 (9th Cir.1980).

Nor can we read Pub.L. 98–454 retroactively. A statute is not given retroactive effect unless such construction is required by its explicit language or by necessary implication. *Bruner*, 343 U.S. at 117 n. 8, 72 S.Ct. at 584 n. 8. *Accord United States v. Rewald*, 835 F.2d 215, 216 (9th Cir.1987). Pub.L. 98–454 neither expressly states nor necessarily implies that this court's jurisdiction has retroactive effect. We therefore cannot infer that we would have had jurisdiction at the time the action or appeal was filed, as required by 28 U.S.C. § 1631.

### B. *Jurisdiction of the Appellate Division*

Appellee urges that neither this court nor the appellate division has jurisdiction over the appeal. We find it highly implausible that Congress could have intended such an absurd result by its silence. We agree with Judge Hefner's concurrence in the appellate division's decision when he states: "I don't believe it can be said that Congress intended a case such as this one to fall into the proverbial judicial crack—

federal questions, diversity and bankruptcy cases (as amended in 1984), and other causes not vested by the local legislature in local trial courts. Until the legislature establishes an island appellate court, the appellate division of the district court hears appeals from the local trial court as allowed by the legislature; some constitutional protections of the right of appeal exist. The appellate division consists of three judges: the district court judge and two visiting judges, of whom one may be from a local court. The Third Circuit hears appeals from the appellate division of the District Court for the Virgin Islands; appellate division decisions from Guam or the Northern Marianas may be appealed to our court.

3. Because we find that this court did not have retroactive jurisdiction, we need not consider whether Saisteve's notice of appeal to the appellate division may be construed as a timely notice of appeal to this court.

never to be resolved." *Gioda v. Saipan Stevedoring*, DCA No. 84–9014, slip op. at 3 (June 19, 1986). We therefore reexamine the jurisdiction of the appellate division over this matter.

Ordinarily, a court is to apply the law in effect at the time it renders its decision. *Bradley v. School Bd.*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). Absent a legislative pronouncement or history to the contrary, this principle applies even when the law is changed during the pendency of an appeal. *Id.* at 715–16, 94 S.Ct. at 2018–19; *Bruner*, 343 U.S. at 112, 72 S.Ct. at 581; *City of Great Falls v. United States*, 673 F.2d 1065, 1068 (9th Cir.1982). Thus, in ordinary circumstances, the appellate division could not continue to hear this appeal after the passage of Pub.L. 98–454.

However, there is an exception to this rule: a new law will not be applied retrospectively if its application will result in manifest injustice. *Bradley*, 416 U.S. at 716, 94 S.Ct. at 2019; *DeGurules v. INS*, 833 F.2d 861, 863 (9th Cir.1987). Whether application of a newly amended statute to an already pending case will cause manifest injustice is determined by an examination of (1) the nature and identity of the parties; (2) the nature of their rights; and (3) the nature of the impact of the change in law upon those rights. *Bradley*, 416 U.S. at 717, 94 S.Ct. at 2019.

Under the first factor, the *Bradley* Court considered the relative advantage of the government in litigation resources when applying an amended law. This court, too, has recognized that the presence of "public entity" litigants favors retroactive application of new law, but that in private suits such as this one, retroactive application may have adverse affects. *See Campbell v. United States*, 809 F.2d 563, 575 (9th Cir.1987).

Applying the second factor of its "manifest injustice" test, the *Bradley* Court upheld a line of cases in which the "Court has refused to apply an intervening change to a pending action where it has concluded that to do so would infringe upon or deprive a person of a right that had matured or

become unconditional." *Id.* 416 U.S. at 720, 94 S.Ct. at 2020. The interests of justice and due process demand that Saisteve's right of appeal be deemed such an unconditional right.

Finally, under the third factor, the *Bradley* Court considered the nature of the impact of the change upon existing rights, or, "to state it another way, ... the possibility that new and unanticipated obligations may be imposed upon a party without notice or an opportunity to be heard." *Id.* Because we cannot foresee any such consequences of our refusal to read the 1984 amendment to remove this appeal from the appellate division, we find that the third prong of *Bradley* also militates in favor of the appellate division retaining jurisdiction over this matter.

Hence, we must also decline transfer because, under *Bradley*, the transferor court does not lack jurisdiction as required by 28 U.S.C. § 1631. We direct, therefore, that the appellate division hear this appeal.

Judge Hefner's concurrence draws our attention to the three prior appeals from the district court involving local law that were pending at the effective date of Pub. L. 98–454, but were subsequently decided by panels of the appellate division nonetheless. Maj. op. at 626–627. For the reasons herein, we allay his concerns; those rulings are not subject to jurisdictional doubt.

## CONCLUSION

Because the appellate division can retain jurisdiction under *Bradley*, and because this court did not acquire retroactive jurisdiction, this matter cannot be transferred here under 28 U.S.C. § 1631. Accordingly, we make no judgment about the merits of this appeal. It remains before the appellate division, having properly been filed there initially under 48 U.S.C. § 1694b (1977).

TRANSFER DENIED; REMANDED.

KOZINSKI, Circuit Judge, dissenting.

I disagree with little in the majority's scholarly and well-reasoned opinion—except the bottom line. While the court's

logic is flawless, it reaches a result that is difficult to square with judicial efficiency and common sense. The court is sending the case to the Appellate Division of the District Court for the Northern Mariana Islands, 5,625 miles away, whence it will inevitably sail back to us across the Pacific. On its return, the case will appear in precisely the same posture as it does today; we will owe the appellate division's opinion no deference. *Guam v. Yang*, 850 F.2d 507, 511 (9th Cir.1988) (en banc). The net effect will be the multiplication of attorney's fees and airfares for the litigants, and additional work for the three appellate division judges and three other judges of this court who will have to address an issue that stands fully briefed and argued and ready for decision by us today.

If the law were clear and there were no way of avoiding such an absurd result, I would have to go along with this trans-oceanic badminton match. But the law is not clear. As the majority aptly notes, this is the forgotten case, the situation Congress simply did not contemplate. Our latitude in making the ends of justice meet and avoiding unnecessary trouble for everyone involved is broader than usual under these circumstances.

I would cut the Gordian knot in this fashion: While we did not have jurisdiction at the time Saipan Stevedoring filed its notice of appeal with the district court, we would have jurisdiction if a timely notice of appeal were filed now. There is only one problem: A notice filed now would be woefully untimely. I would nevertheless encourage Saipan Stevedoring to file a notice of appeal, and would then deem it timely under the "unique circumstances" doctrine because of Saipan Stevedoring's reasonable reliance on the appellate division's previous assertion of jurisdiction. *See Fiester v. Turner*, 783 F.2d 1474, 1476 (9th Cir.1986); *United Artists Corp. v. La Cage Aux Folles, Inc.*, 771 F.2d 1265, 1268 (9th Cir. 1985). Then the appeal would be properly before us and we would be able to rule on the merits with a clear conscience, saving everybody a great deal of trouble.

I cannot fault my distinguished colleagues for eschewing this solution; the result they reach is certainly more elegant. But when we are dealing with a single case, trapped between two jurisdictional statutes, where our ruling will have no precedential effect whatsoever, I would be willing to swap a little bit of elegance for a whole lot of convenience to everyone involved.