**CITY OF GREAT FALLS,**
**Petitioner-Appellant,**

v.

**UNITED STATES DEPARTMENT OF LABOR, et al., Respondents-Appellees.**

No. 80–7395.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 7, 1981.

Decided April 5, 1982.

As Amended on Denial of Rehearing and Rehearing En Banc
June 24, 1982.

David V. Gliko, Great Falls, Mont., for petitioner-appellant.

Harry L. Sheinfeld, Washington, D. C., Patrick F. Flaherty, Boulder, Mont., for respondents-appellees.

Before BROWNING, Chief Judge, WRIGHT, Circuit Judge, and THOMPSON,* District Judge.

* Honorable Bruce R. Thompson, Senior United States District Judge, District of Nevada, sitting by designation.

PER CURIAM:

This is a petition to review final action by the Secretary of Labor under the Comprehensive Employment and Training Act of 1973 (CETA), as revised by the Comprehensive Employment and Training Act Amendments of 1978 (CETA) (29 U.S.C. § 801 et seq.). Jurisdiction is vested in the United States Court of Appeals (29 U.S.C. § 817).

The facts were stipulated and are undisputed. The Governor's Employment and Training Council of Montana (GETC), a "prime sponsor" operating and receiving moneys under CETA, sub-granted a portion of its allocation to Great Falls. In 1974, Parks was denied employment pursuant to an unwritten local anti-nepotism policy which precluded employment in the same city department of members of the same family. Upon Parks' filing of a grievance with the prime sponsor under procedures established pursuant to 29 C.F.R. § 98.26 (1975), the hearing officer on June 9, 1978 determined the provision violated CETA regulations only because it was unwritten but found he did not have the authority to order reinstatement or payment of back wages. Thereafter, the executive officer of the prime sponsor confirmed the decision on the merits but ordered back pay. In April, 1979, the Regional Administrator of the U. S. Department of Labor affirmed the award and additionally awarded interest. That order was in turn affirmed on review by an Administrative Law Judge (ALJ) and has become the final decision of the Secretary of Labor. 20 C.F.R. §§ 676.88, 676.-91(f) (1980). Great Falls seeks review solely to challenge the Secretary's authority to make a back pay award.

The 1973 Act concerned itself almost exclusively with the cooperative plans to be developed by the individual states and with the enforcement of CETA policies against the recipients of federal funds allocated in implementation of the plans. The enforcement sanctions of the 1973 Act (29 U.S.C. §§ 818(b)(2) and 818(d)) provided for the revocation of the plan or the withholding of funds if violations of the 1973 Act were found to exist. In the instant case, Great Falls' unwritten nepotism policy ·was deemed an artificial barrier to employment proscribed by the Act (29 U.S.C. § 884). Only one section of the 1973 Act dealt with rights of aggrieved individuals. Section 991 of Title 29 U.S.C., pertains to "nondiscrimination." Section 991(a) provides that "No person shall on the ground of race, color, national origin or sex be excluded from participation in, be denied benefits … under this chapter." Section 991(d), in substance, incorporates certain provisions of the Civil Rights Act of 1964 and provides: "This section shall not be construed as affecting any other legal remedy that a person may have if that person is excluded from participation in, denied the benefits of, subjected to discrimination under, or denied employment in connection with any program or activity receiving assistance under this chapter." This statute recognizing actionable rights of certain aggrieved persons concededly has no application to applicant Parks inasmuch as he was not a victim of discrimination.[1]

---

1. Respondent relies upon decisions of two administrative law judges for authority to award back pay under the 1973 Act: *In the Matter of Ms. Blanche Field and the City of Boston*, Case No. 77–CETA–102, and *In the Matter of City of San Diego Termination of Randall McFadden and H. J. Parker*, Case No. 78–CETA–107. Both were cases of wrongful termination of employment without a due process hearing. In addition to this distinction, in *Field* back pay was awarded without any discussion of authority to do so, and in *McFadden and Parker* the authority for back pay was rested upon 29 C.F.R. 98.48(f) (1975):

The final decision may provide for suspension or termination of, or refusal to grant or continue Federal financial assistance, in whole or in part, under the program involved in accordance with the Act, and may contain such terms, conditions, and other provisions as are consistent with and will effectuate the purposes of the Act and regulations issued thereunder, including provisions designed to assure that no Federal financial assistance will thereafter be extended under such program to the respondent determined by such decision to be in default in its performance of an assurance given by it pursuant to the Act or regulations issued thereunder, or to have otherwise failed·to comply with the Act or regulations issued thereunder, unless and until it corrects its noncompliance, and satisfies

On October 27, 1978, while Parks' appeal was still pending, Congress created new rights and a new remedy by passing 29 U.S.C. § 816(f). Pursuant to the authority of 816(f), on May 15, 1979, the Secretary promulgated 20 C.F.R. § 676.91(c) which specifically allows for back pay awards. We are thus faced with the question of whether the 1978 statute and regulation apply to this case.

The United States Supreme Court has stated the controlling rule of law as follows: "... a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley v. School Board of City of Richmond*, 416 U.S. 696, 712, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). The origin and the justification for this rule are found in the words of Mr. Chief Justice Marshall in *United States v. Schooner Peggy*, 1 Cranch 103, 2 L.Ed. 49 (1801):

> It is in the general true that the province of an appellate court is only to enquire whether a judgment when rendered was erroneous or not. But if subsequent to the judgment and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed, or its obligation denied. If the law be constitutional ... I know of no court which can contest its obligation. It is true that in mere private cases between individuals, a court will and ought to struggle hard against a construction which will, by a retrospective operation, affect the rights of parties, but in great national concerns ... the court must decide according to existing laws, and if it be necessary to set aside a judgment, rightful when rendered, but which cannot be affirmed but in violation of law, the judgment must be set aside.

■ In this case, there is no statutory direction or legislative history indicating that section 816(f) should not be applied retroactively. Therefore, unless manifest injustice will occur, the court must apply section 816(f) and uphold the award of back pay.

■ In determining whether it would work an injustice to apply a change in law to a pending case, the Supreme Court has directed courts to consider "(a) the nature and identity of the parties, (b) the nature of their rights, and (c) the nature of the impact of the change in law on those rights." *Bradley v. School Board of City of Richmond, supra*, 416 U.S. at 718, 94 S.Ct. at 2019. No one factor is dispositive, and there is a general presumption that changes in law apply to cases being reviewed on appeal. *See Dobbins v. Schweiker*, 641 F.2d 1354, 1360 n.8 (9th Cir. 1981).

■ In discussing the first factor, the Supreme Court has distinguished litigation involving "great national concerns," and parties who are public entities, from private cases between individuals. *Id.*, 416 U.S. at 718–19, 94 S.Ct. at 2019–20, citing *Schooner Peggy, supra*, 1 Cranch at 110. *But cf. Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 486 n.16, 101 S.Ct. 2870, 2879 n.16, 69 L.Ed.2d 784 (1981) (law affecting damages applied retroactively even in private suit where no issue of great national concern). The Secretary of Labor and the City of Great Falls are public entities, and this factor favors application of the new law. *See Hill v. United States*, 571 F.2d 1098, 1102 (9th Cir. 1978). On the other hand, this case does not involve issues of great national concern. Parks did not vindicate a policy of national importance. As a result of this protracted litigation, the city was merely required to put in writing an otherwise valid hiring policy. The city's violation was a minor deviation. There was no finding that the city engaged in any of the more serious program abuses prohibited by

the Secretary that it will fully comply with the Act and regulations issued thereunder. While awarding back pay under this regulation, which on its face deals only with sanctions against program recipients, the ALJ also

quite inconsistently ruled: "There is no provision under either the Act or the regulations for the payment of interest and none is here awarded." Other precedent relied upon by respondent is dictum.

section 816. Therefore, the application of existing law to this case will not further an important congressionally expressed federal policy.

The second factor requires us to consider the nature of the rights affected by the retroactive application of the change in law. In this regard, the issue is whether application of the new law "would infringe upon or deprive a person of a right that had matured or become unconditional." *United States v. Fresno Unified School District,* 592 F.2d 1088, 1094 (9th Cir. 1979). Great Falls had no vested or unconditional right to CETA funds. *Cf. Jensen v. Gulf Oil Refining & Marketing Co.,* 623 F.2d 406, 411 (5th Cir. 1980). However, the 1978 amendments subjected CETA participants to new, unanticipated liability for noncompliance with the regulations. The Secretary did not promulgate regulations expressly authorizing back pay awards as a sanction for noncompliance until after the enactment of the 1978 amendment. Although there appears to have been some uncertainty in the law prior thereto,[2] this case contrasts with *Bradley* where the new section allowing attorney's fees in desegregation cases merely created an *additional* basis for the Board's potential obligation to pay fees. *Bradley,* 416 U.S. at 721, 94 S.Ct. at 2021.

The third factor focuses on whether the new law effected a change in the "substantive obligations of the parties" such that there would have been a difference in behavior which would have rendered the litigation unnecessary. *Bradley,* 416 U.S. at 721, 94 S.Ct. at 2021. It is plain that the 1978 amendment adding 29 U.S.C. § 816(f) effected a change of substantive as well as adjective law. Subdivisions (1) and (2) define possible violations by a recipient (The City of Great Falls) including "or otherwise unlawfully denied to any person a benefit to which that person is entitled under the provisions of this chapter." The concluding statement in subsection (f) pro-

vides the remedy: "... the Secretary shall, within 30 days, *take such action or order such corrective measures,* as necessary, with respect to the recipient or the aggrieved person, or both." (Emphasis added.) The foregoing confluence of substantive and procedural changes granted power to the Secretary to provide for an award of back pay to a CETA applicant for employment. It is noteworthy that before 1978 the CETA Act of 1973 contained no similar specific provisions granting rights to an aggrieved person. It is also especially noteworthy that the Secretary did not see fit to promulgate regulations authorizing back pay awards until 20 C.F.R. 676.91(c) was adopted *after* enactment of the 1978 amendments. Furthermore, it seems likely that Great Falls would have remedied or prevented the technical and minor violation had it foreseen the imposition of new liability in the form of a substantial back pay award. By retroactive application of the 1978 amendments, the City would be subject to far greater liability than it would have reasonably expected for a technical violation.

Finally, we note the manifest injustice rule represents an "equitable exception" to *Bradley. Gulf Offshore, supra,* 453 U.S. at 486 n.16, 101 S.Ct. at 2879 n.16. In considering equities, we find it significant that approximately four years expired between the time of the wrongful denial of employment and the first administrative hearing. Had the case been diligently prosecuted, it seems likely that it would have been conclusively adjudicated before the enactment of the 1978 amendment and promulgation of the regulations thereunder in 1979. To apply the amendment would effectively permit Parks to benefit from his own lack of diligence.[3]

Although there are various countervailing factors, and the issue is close, we find that under the circumstances of this case,

---

2. *See Maloney v. Sheehan,* 453 F.Supp. 1131, 1138 (D.Conn.1978); *Hernandez v. Penn,* 398 F.Supp. 1010, 1013 (W.D.N.Y.1975).

3. Although petitioner did not raise the defense of laches or statute of limitations, the court inquired into the reasons for delay *sua sponte* at oral argument. Counsel for Parks did not offer adequate justification for the delay.

particularly the protracted nature of this litigation, it would be manifestly unjust to apply the change in law retroactively.

The decision awarding back pay and interest is reversed.