**Dolores RAYA, Plaintiff,**

v.

**MARYATT INDUSTRIES and Gregory Cornell, Defendants.**

**No. C–88–4276 MHP.**

United States District Court,
N.D. California.

July 26, 1993.

## MEMORANDUM AND ORDER

PATEL, District Judge.

### INTRODUCTION

Plaintiff Dolores Raya's motion for leave to amend her complaint was heard before the late Judge Robert F. Peckham on December 21, 1992. Raya seeks to amend her complaint to substitute a claim under the Americans with Disabilities Act (ADA) for the disability discrimination claim set forth in the original and amended complaints. Raya also requests a jury trial under Rule 39(b). Having considered the submissions and arguments of the parties, and for the following reasons, the court DENIES the motion for leave to amend the complaint.

### BACKGROUND

Raya filed her original complaint in September 1988 in California state court. The original complaint alleged 1) retaliation, 2) physical handicap discrimination in violation of California Government Code § 12940, 3) breach of contract, 4) intentional infliction of emotional distress, 5) specific performance, and 6) tortious breach of the covenant of good faith and fair dealing. The case was removed to this court shortly thereafter. In September 1989, the court granted summary judgment for defendants on all six of the claims. In August 1991, the Ninth Circuit reversed as to the retaliation and physical handicap discrimination claims. Thus, those two claims are now the only remaining claims in plaintiff's original complaint.

Raya was represented by counsel from October 1989 to September 1991 during her appeal to the Ninth Circuit. After that time, a non-lawyer cousin, Rudolfo Velasquez, aided her. After several major discovery disputes, this court appointed counsel to represent Raya. (Order of June 25, 1992.)

Raya's new counsel, appointed in October 1992, filed a motion for leave to amend the complaint on November 9, 1992. The amended complaint requests a trial by jury and the use of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, for the disability discrimination claim in the original and amended complaints.

### DISCUSSION

Defendants oppose plaintiff's motion on three grounds: 1) plaintiff's motion is procedurally defective; 2) plaintiff's attempt to add a claim under the ADA should be denied because the ADA does not apply retroactively, the amendment was unduly delayed, and the amendment would cause undue prejudice; and 3) plaintiff has waived her right to a jury trial.

## A. *Procedural Objections*

■ Defendants contend that plaintiff failed to file a copy of the proposed amended complaint. On October 19 and November 10, 1992, plaintiff served defendants' counsel with a copy of the proposed amended complaint, which plaintiff lodged with the court on October 14 and November 10. Neither the Local Rules for the Northern District of California nor the Federal Rules of Civil Procedure require a party to formally *file* a proposed pleading. In fact, it is more proper to lodge a proposed filing with the court until leave is granted to actually file the document. Thus, counsel for Raya did not err in failing to formally file the complaint.

■ Defendants also object that plaintiff's *notice* of the motion fails to "state with particularity the grounds therefor, and … the relief or order sought" in accordance with Fed.R.Civ.P. 7(b). While it would have been preferable for plaintiff to have specified the basis for her amendment in addition to the relief requested, this error is not a ground for denying the motion.

## B. *Request to Add ADA Claim*

Plaintiff wishes to amend her complaint to substitute a claim under the ADA for the disability discrimination claim in her original and amended complaints. Leave of court to amend a pleading "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). The Federal Rules favor granting leave to amend, according to the Supreme Court:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be freely given.

*Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Thus, defendants need to show that the amendment is futile, that plaintiff has unduly delayed the amendment, or that the amendment will cause undue prejudice.

## 1. *Retroactivity of the ADA*

■ Title I of the ADA prohibits discrimination by certain private employers against individuals with disabilities. 42 U.S.C. § 12112(a). The remedies available under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., are available to those claiming employment discrimination under the ADA. 42 U.S.C. § 12117(a). Additionally, the Civil Rights Act of 1991 allows plaintiffs to claim compensatory and punitive damages for discrimination under the ADA, just as they can for violations of Title VII. 42 U.S.C. § 1981a(a)(2) & (b). The ADA was enacted on July 26, 1990, but its provisions relating to employment discrimination did not take effect until July 26, 1992. *See* Pub.L. No. 101–336, Title I, § 108 (codified as note to 42 U.S.C.A. §§ 12111–12117) ("Effective Date: This title shall become effective 24 months after the date of enactment").

Because the alleged discrimination in this case took place in 1987, well before the 1992 effective date of the ADA, the ADA must apply retroactively in order for plaintiff to state a claim for relief. The retroactivity of the ADA is properly before the court on a motion for leave to amend the complaint, as the parties have addressed it and the issue pertains to the possible futility of the motion to amend. *Foman v. Davis,* 371 U.S. at 182, 83 S.Ct. at 230.

It is important to note that this motion is about the retroactivity of the ADA statute itself. Only if the substantive statute is retroactive does the court reach the issue of retroactivity of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, which contains the remedies for violations of the ADA. While this district has held that section 102(a) of the 1991 Act, which governs the *remedies* for disability discrimination, applies retroactively in a case involving disability discrimination, the court did not clarify whether plaintiff had brought her claim under the ADA or the Rehabilitation Act of 1973. Nor did the court address whether the substantive provisions of the ADA applied retroactively. *See Lee v. Sullivan,* 787 F.Supp. 921, 933 n. 15 (N.D.Cal.1992). We keep in mind that the ADA is the substantive law creating rights

and duties; the 1991 Act merely amends the ADA and provides the remedies.

While not specifically analyzing the retroactivity of the ADA itself, some courts have relied on the statute's delayed effective date to hold that the ADA does not apply to claims which arose before the effective date. *See Post v. Kansas Gas & Elec. Co.*, 1993 WL 246087, at *2 (D.Kan. June 14, 1993); *Barraclough v. ADP Automotive Claims Servs. Inc.*, 818 F.Supp. 1310, 1311–12 (N.D.Cal.1993); *Binder v. Emerson Elec. Co.*, 1992 WL 442111, at *6, 8 Indiv.Empl.Rts.Cas. (BNA) 114 (E.D.Mo. Sept. 28, 1992) (all involving employment discrimination provisions of Title I); *cf. Rothman v. Emory Univ.*, 828 F.Supp. 537, 541 (N.D.Ill. 1993) (Title III); *Coleman v. Zatechka*, 824 F.Supp. 1360, 1366 n. 14 (D.Neb.1993) (Title II); *Dean v. Thompson*, 1993 WL 169734 *4 (N.D.Ill. May 6, 1993) (Title II). *But see Clarkson v. Coughlin*, 145 F.R.D. 339, 348 (S.D.N.Y.1993) (allowing leave to amend complaint to add Title II ADA claim which arose before effective date).

The fact that the Act has a delayed effective date suggests that Congress did not intend the Act to apply retroactively, but it does not entirely dispose of the substantive retroactivity question. *See Ayala–Chavez v. U.S. I.N.S.*, 945 F.2d 288, 291, n. 5 (9th Cir.1991), *overruled on other grounds*, Pub.L. No. 102–232, 105 Stat. 1733, § 306(a)(11). The court must therefore examine the general precedent governing retroactive application of statutes.

The Supreme Court has issued seemingly inconsistent presumptions regarding retroactive application of statutes. In *Bradley v. Richmond School Board*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974), the Court held that "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." The Court directed lower courts to consider the following factors in determining whether "manifest injustice" will result: 1) the nature and identity of the parties (private parties making retroactive application less likely), 2)

the nature of their rights (whether retroactive application would deprive a party of a matured or unconditional right), and 3) the nature of the impact of the change in the law upon those rights (whether the change would impose new and unanticipated obligations on a party without notice or opportunity to be heard). *Id.* at 717–21, 94 S.Ct. at 2019–21.

But in *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988), the Court stated: "Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." The Court concluded that a government agency had no authority to promulgate retroactive Medicare regulations. A year later, the Court noted that the *Bradley* and *Bowen* cases were in "apparent tension," but it declined to resolve this conflict. *See Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 837, 110 S.Ct. 1570, 1577, 108 L.Ed.2d 842 (1990). "[U]nder either view, where the congressional intent is clear, it governs." *Id.*

The Ninth Circuit, struggling to apply this thicket of precedent, has not resolved the tension between *Bradley* and *Bowen*. Some Ninth Circuit cases have applied *Bradley* even after *Bowen* was decided. *See, e.g., FDIC v. New Hampshire Ins. Co.*, 953 F.2d 478 (9th Cir.1991); *Gonzalez v. Aloha Airlines, Inc.*, 940 F.2d 1312, 1316 (9th Cir. 1991); *Com. of N. Mariana Islands v. Kawano*, 917 F.2d 379, 381–82 (9th Cir.1990), *cert. denied*, 499 U.S. 910, 111 S.Ct. 1116, 113 L.Ed.2d 224 (1991); *In re Pacific Far East Lines, Inc.*, 889 F.2d 242, 247 (9th Cir.1989); *Bryant v. Ford Motor Co.*, 886 F.2d 1526, 1528–31 (9th Cir.1989), *cert. denied*, 493 U.S. 1076, 110 S.Ct. 1126, 107 L.Ed.2d 1033 (1990); *Delta Computer Corp. v. Samsung Semiconductor & Telecommunications*, 879 F.2d 662 (9th Cir.1989); *Kruso v. International Tel. & Tel. Corp.*, 872 F.2d 1416, 1424–25 (9th Cir.1989), *cert. denied*, 496 U.S. 937, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). Other cases have applied *Bowen*. *See Norfolk Energy, Inc. v. Hodel*, 898 F.2d 1435, 1442 (9th Cir.1990) ("Retroactive application of statutes and regulations, *if expressly autho-*

*rized by Congress,* is valid if the application is a rational means of serving a legitimate legislative purpose"); *Nelson v. Ada,* 878 F.2d 277, 280 (9th Cir.1989) (applying presumption against retroactivity without citing either *Bradley* or *Bowen* ). A third line of cases holds that a presumption of retroactivity applies "when a statute is addressed to remedies or procedures and does not otherwise alter substantive rights"; otherwise, statutes are ordinarily given prospective effect. *Friel v. Cessna Aircraft Co.,* 751 F.2d 1037, 1039 (9th Cir.1985); *see also FDIC,* 953 F.2d at 487.

Without resolving the conflict, we discern some general trends. First, most of the cases in which the courts found retroactive application appropriate involved procedural or remedial statutes, rather than statutes imposing new substantive obligations. *See, e.g., Bradley,* 416 U.S. at 711, 94 S.Ct. at 2016 (attorneys' fees); *FDIC,* 953 F.2d at 486–87 (statute of limitations); *Gonzalez,* 940 F.2d at 1316 (statute of limitations); *Mariana Islands,* 917 F.2d at 381–82 (appellate jurisdiction); *Pacific Far East,* 889 F.2d at 246–47 (cap on statutory fee paid to bankruptcy referees' fund); *Bryant,* 886 F.2d at 1528, 1530–31 (removal statute); *Delta Computer,* 879 F.2d 662 (appeal from interlocutory orders re arbitration); *Kruso,* 872 F.2d at 1424–25 (removal statute); *Friel,* 751 F.2d at 1039 (statute of limitations).

Second, where a substantive statute was involved, the court applied it retroactively only because Congress had stated expressly that the statute applied to claims arising before its enactment. *See Norfolk,* 898 F.2d at 1442. Other courts, like *Bowen,* have declined to apply substantive statutes or amendments retroactively in the absence of express congressional intent. For example, Title VII was amended in 1972 to extend its provisions to non-religious educational institutions, which had previously been exempted from the statute. 42 U.S.C. § 2000e–1 (as amended by Pub.L. No. 92–261); *see* Historical Note to 42 U.S.C.A. § 2000e–1. Courts rejected attempts by plaintiffs to invoke Title VII for discrimination claims that occurred before the amendment's effective date of March 24, 1972. *See Weise v. Syracuse Uni-*

*versity,* 522 F.2d 397, 410 (2d Cir.1975), *overruled on other grounds, United Bhd. of Carpenters & Joiners v. Scott,* 463 U.S. 825, 831–33, 103 S.Ct. 3352, 3357–58, 77 L.Ed.2d 1049 (1983). *Weise* reasoned that the court was

asked to give retroactive effect to a statute creating new rights where none had previously existed. The manifest injustice of such *ex post facto* imposition of civil liability is reflected in the general rule of construction that absent clear legislative intent statutes altering substantive rights are not to be applied retroactively.

*Weise,* 522 F.2d at 411, *citing Greene v. United States,* 376 U.S. 149, 160, 84 S.Ct. 615, 621, 11 L.Ed.2d 576 (1964). *Accord Faulkner v. Federation of Preschool & Community Educ. Ctrs., Inc.,* 564 F.2d 327, 328 (9th Cir.1977); *Abramson v. University of Hawaii,* 594 F.2d 202, 207–08 (9th Cir.1979).

Turning to the ADA, we first examine congressional intent. The ADA itself and its legislative history mention nothing about retroactive application. The Act does have a delayed effective date, and it gradually, over a two year period, extends its requirements to smaller employers. 42 U.S.C. § 12111(5)(A). As noted above, while the delay in the effective date and the phase-in provisions do not resolve our inquiry, they do suggest some hesitance on the part of Congress to apply the statute immediately, much less retroactively. The legislative history supports this interpretation by indicating that Congress and the President intended the delay to allow the relevant government agencies to review, amend, and enact implementing regulations and to allow employers adequate time to comply with the statute's requirements. H.R.Rep. No. 485(II), 101st Cong., 2d Sess. 57, 82, *reprinted in* 1990 U.S.C.C.A.N. 267, 303, 339, 364; Statement of President Bush upon signing S.933, 1990 U.S.C.C.A.N. 601, 602. Among other things, the statute requires employers to make reasonable accommodations for disabled employees, and such changes necessarily take time. 42 U.S.C. § 12112(b)(5)(A).

One amendment to the ADA, section 109(c) of the 1991 Civil Rights Act, 42 U.S.C. § 12112(c), specifies that it applies only prospectively. But section 109(c) extends the

provisions of the ADA to employers in foreign countries; it is not directly relevant to the retroactivity of the ADA's provisions relating to private employers in the United States. *Estate of Reynolds v. Martin,* 985 F.2d 470, 474 (9th Cir.1993), concluded that because this section specifies that it applies only prospectively, the remainder of the 1991 Act must apply retroactively, under the ordinary rule of statutory interpretation that no provision should be construed to be entirely redundant. This argument does not make sense in the context of the ADA, however, where section 109(c) was part of an entirely separate statute and was added to the ADA after its enactment. Thus, the presence of section 109(c) does not indicate that Congress intended the remainder of the ADA to apply retroactively.

■ We next note that the ADA is a substantive statute rather than a remedial one. According to plaintiff, the court should apply the *Friel* presumption in favor of retroactivity because the ADA is a procedural or remedial statute. The court does not agree. Among other things, the ADA created "enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(2); H.R.Rep. No. 485(II), *supra,* at 22–23 (1990 U.S.C.C.A.N. 303, 304). A statute creating new causes of action against private employers for discrimination cannot be labelled a mere remedial statute; it bestows new substantive rights upon those the statute is designed to protect. Nor is the court persuaded by plaintiff's reliance on cases holding that the 1991 Civil Rights Act applies retroactively. *See Estate of Reynolds,* 985 F.2d 470. The 1991 Civil Rights Act expanded the scope of existing civil rights statutes and the remedies available under them. In some instances, it sought to return to earlier case law that had been changed by later Supreme Court decisions. *See Stender v. Lucky Stores, Inc.,* 780 F.Supp. 1302, 1308 (N.D.Cal.1992). The ADA, by contrast, created entirely new federal rights and obligations. Moreover, the cases holding the Civil Rights Act retroactive relied on language and legislative history particular to the 1991 Act itself. *See Reynolds,* 985 F.2d at 473–76; *Stender,* 780 F.Supp. at 1303–06.

In addition, examining each of the *Bradley* factors—nature and identity of the parties, nature of their rights, and nature of the impact of the change in law upon those rights—leads the court to conclude that retroactive application would result in manifest injustice. Although disability discrimination presents "national concerns", *Bradley,* 416 U.S. at 719, 94 S.Ct. at 2020 (*quoting United States v. Schooner Peggy,* 5 U.S. (1 Cranch) 103, 110, 2 L.Ed. 49 (1801)), the parties are private citizens. While retroactive application of the ADA might not deprive defendants of a "matured or unconditional right," it does impose new and unanticipated obligations on defendants, raising due process concerns. By prohibiting discrimination against disabled persons by *private* employers, the ADA provides a "clear and comprehensive national mandate" to end discrimination against disabled persons. 42 U.S.C. § 12101(b)(1); H.R.Rep. No. 485(II), *supra,* at 22 (1990 U.S.C.C.A.N. at 304). The ADA thus fills a gap in existing law; the only existing federal legislation protecting disabled persons from employment discrimination was the Rehabilitation Act of 1973, which applied only to the federal government, government contractors, and recipients of federal assistance. The ADA's legislative history emphasizes the inadequacy of existing state and federal laws in addressing disability discrimination and the bold departure of the ADA in, among other things, incorporating private employers in its scheme. *See, e.g.,* H.R.Rep. No. 485(II), *supra,* at 28–29, 32–34, 47–48 (1990 U.S.C.C.A.N. at 310, 314–16, 329–30); H.R.Rep. No. 485(III), 101st Cong., 2d Sess. 23–26, *reprinted in* 1990 U.S.C.C.A.N. 445, 446–49; H.R.Rep. No. 485(IV), 101st Cong., 2d Sess. 23–24, *reprinted in* 1990 U.S.C.C.A.N. 512, 513; *Bush Statement, supra,* at 601. Unlike the attorneys' fees statute in *Bradley,* the ADA does not merely create an "additional basis or source" for a private employer's obligation not to discriminate against disabled individuals. *Bradley,* 416 U.S. at 721, 94 S.Ct. at 2021. Rather, it imposes "an additional or unforeseeable obligation upon it." *Id.*

For the foregoing reasons, retroactive application of the ADA would not be appropri-

ate. Because the amendment would be futile, the request to amend the complaint to add the ADA claim is DENIED.

### 2. *Undue Delay and Prejudice*

Because the amendment is futile, the court does not reach defendants' arguments that plaintiff unduly delayed amendment and that amendment would cause undue prejudice.

### C. *Request for a Jury Trial*

Plaintiff also requests a jury trial under Federal Rule of Civil Procedure 39(b). Rule 38(d) specifies that failure to file a demand for a jury trial within the time specified in Rule 38(b) ("10 days after service of the last pleading directed to such issue [to be tried]") constitutes waiver of that right. The "last pleading" was an answer served on October 31, 1988. Although plaintiff has waived her rights under Rule 38, she seeks relief from her failure to file a timely jury demand.

Rule 39(b) gives the court discretion to order a jury trial even where a party has waived its rights under Rule 38(d). The Ninth Circuit takes a narrow view of the discretion permitted by Rule 39(b). Rule 39(b) "does not permit a court to grant relief when the failure to make a timely demand results from an oversight or inadvertence." *Lewis v. Time, Inc.,* 710 F.2d 549, 556–57 (9th Cir.1983). *See also Beckham v. Safeco Ins. Co.,* 691 F.2d 898, 905 (9th Cir.1982); *Sutton v. Atlantic Richfield Co.,* 646 F.2d 407 (9th Cir.1981); *Chandler Supply Co. v. GAF Corp.,* 650 F.2d 983, 987–88 (9th Cir.1980) (all expressing same view).

Defendants argue that plaintiff's failure to make a timely jury demand was due to inadvertence, as she was represented by counsel and was assisted by Rudolfo Velasquez during earlier stages of this proceeding. Plaintiff contends that she was represented by counsel only during her appeal to the Ninth Circuit and that the extent of Mr. Velasquez' assistance after that time is unknown and was often more of a hindrance than a help. Thus, plaintiff submits that we should grant her lenience as a *pro se* litigant (until now) with limited education and little command of the English language.

The allegations of a *pro se* litigant are held to less stringent standards than the formal pleadings drafted by counsel. *See Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Plaintiff relies on *Merritt v. Faulkner,* 697 F.2d 761, 766–67 (7th Cir.), *cert. denied,* 464 U.S. 986, 104 S.Ct. 434, 78 L.Ed.2d 366 (1983), to argue that the court should also take into consideration her additional educational and language circumstances. In *Merritt,* the Seventh Circuit found that plaintiff's *pro se* status, the importance of the right to trial by jury, and the plaintiff's blindness combined to excuse the plaintiff's failure to file a timely jury demand. The Seventh Circuit, however, takes a broader view of Rule 39(b) than does the Ninth Circuit. The *Merritt* court held that "[i]n the absence of strong and compelling reasons to the contrary, untimely jury demands should be granted." *Merritt* at 767.

In light of the Ninth Circuit's narrower view of Rule 39(b), the *Merritt* case is not persuasive. In addition, unlike the *pro se* litigant in *Merritt,* Raya is not blind. Raya obviously had some help drafting the complaint; it is written in English, conforms to the general format of a legal complaint (e.g. sets forth each claim individually, uses pleading paper, etc.), and is sprinkled with legal terminology. The parties agree that Raya had a right to a jury on the state law claims when she filed the complaint. These factors compel the court to conclude that the failure to file a timely jury trial demand was due to inadvertence or oversight. Plaintiff's request for a jury trial is therefore DENIED.

### CONCLUSION

For the reasons stated above, plaintiff's motion for leave to amend the complaint to allege a cause of action under the ADA and to request a jury trial is hereby DENIED.

The court recognizes that, because only state law claims remain, the court has discretion to dismiss the case under 28 U.S.C. § 1367(c)(3). *Schneider v. TRW, Inc.,* 938 F.2d 986, 993–94 (9th Cir.1991). Because neither party has called for dismissal, because this case is approaching trial, and because a good deal of judicial time and effort

has been invested in it, this court will retain jurisdiction. *See Schneider,* 938 F.2d at 993–94.

IT IS SO ORDERED.